JUDGE DAVID BRIONES

FILED
2023 MAR 10 PM 2:35
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MANUEL GUADIAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CENTURY SUPPORT SERVICES, LLC**<br>a Delaware Limited Liability Company<br><br>**Defendant.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP23CV0105 |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1. Plaintiff MANUEL GUADIAN is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant CENTURY SUPPORT SERVICES, LLC ("CENTURY") is a limited liability company existing under the laws of Delaware with its principal address at 2000 Commerce Loop STE 2111 N Huntingdon, PA 15642-8113 and is a Texas foreign limited liability company and can be served via registered agent C T Corporation System 1999 Bryan St., STE. 900 Dallas TX 75201.

## NATURE OF ACTION

3. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4. Plaintiff Manuel Guadian ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers placed unauthorized phone calls to him in violation of the TCPA.

5. As part of marketing their services, Defendant authorized telemarketers to make unauthorized phone calls to Plaintiff's cell phone on their behalf.

6. Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

**JURISDICTION AND VENUE:**

7. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9. This Court has personal jurisdiction over Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23. Plaintiff successfully registered his personal cell phone number ending in -5579 on the National Do-Not-Call Registry since January 3, 2023, which was more than 31 days prior to receiving the alleged calls.

24. Plaintiff never asked the National Do-Not-Call Registry administrator to remove his phone numbers from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25. Defendant Century offers debt relief services to consumers.

26. Defendant Century is owned and operated by Dan Frazier.

27. Defendant Century generates and qualifies new clients through illegal telemarketing calls that violate the TCPA.

28. As part of their marketing, Defendant CENTURY hired and authorized an unknown entity by the name of US debt solution center ("US debt") to solicit Defendant CENTURY's debt relief services.

29. US debt is an unknown entity at this time however will be revealed during discovery.

30. Upon information and belief US debt is a call center based outside the United States.

31. Defendant CENTURY approves of the contracts with US debt.

32. Defendant CENTURY authorizes the payments to US debt.

33. Defendants CENTURY pays US debt out of bank accounts they own and control.

34. Defendant CENTURY are well aware that the unauthorized phone calls being made on their behalf by US debt soliciting Defendant CENTURY's debt relief services violate the TCPA.

35. Defendant CENTURY willfully accepts leads from US debt that generate through illegal telemarketing because these leads benefit Defendant CENTURY financially.

36. Defendant CENTURY has been sued prior to this lawsuit for violating the TCPA *Fabricant v. Century Support Services, LLC et al*, No. 2:19-cv-00058-DSC (W.D.PA., Jan. 18, 2019) and continue their illegal behavior because violating the TCPA benefits Defendant CENTURY financially.

37. Plaintiff received at least seven (7) unauthorized phone calls to his personal cell phone ending in 5579 calling on behalf of and/or from Defendant CENTURY soliciting their debt relief services within a thirty-day period ("the calls").

38. The calls 1-3 were from telemarketers calling from US debt on behalf of Defendant CENTURY.

39. The calls 1-3 from US debt were generated and made using an automatic telephone dialing system ("ATDS").

40. The ATDS that US debt used to make calls 1-3 had the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

41. The calls 1-3 from US debt were not made to Plaintiff directly and could have reached anyone in the United States.

42. **Call# 1-** On Feb 21, 2023, at 9:08 AM, Plaintiff received a call to his personal cell phone ending in 5579 from a female telemarketer with an Asian Accent from US debt solution center

from phone number (726) 232-9434 soliciting debt relief services on behalf of Defendant CENTURY.

43. Plaintiff advised the female telemarketer he was not interested and disconnected the call.

44. **Call# 2** - On Feb 21, 2023, at 9:19 AM, Plaintiff received a call to his personal cell phone ending in 5579 from a female telemarketer with an Asian Accent from US debt from phone number (806) 814-9373 soliciting debt relief services on behalf of Defendant CENTURY.

45. Plaintiff advised the female telemarketer he was not interested and disconnected the call.

46. **Call# 3** - On Feb 21, 2023, at 11:26 AM, Plaintiff received a call to his personal cell phone ending in 5579 from a female telemarketer with an Asian Accent from US debt from phone number (726) 232-9434 soliciting debt relief services on behalf of Defendant CENTURY.

47. The Female telemarketer advised Plaintiff the reason for the call was because they are offering a program to pay off all of Plaintiff's unsecured debt.

48. Plaintiff was extremely aggravated for continuing to receive calls from telemarketers soliciting debt relief services and advised the female telemarketer he was interested in their services for the sole purpose of identifying the company responsible for the calls.

49. The Female telemarketer asked Plaintiff qualifying questions about any unsecured debt, credit card and loans to see if he can qualify for a debt settlement program.

50. The Female telemarketer asked if Plaintiff could afford a minimum monthly payment of $250 for the program which is one of Defendant CENTURY's qualifications.

51. Female telemarketer than advised Plaintiff she was going to transfer him to a "senior account manager" to discuss more about the program.

52. Defendant CENTURY instructs US debt to say they are transferring the to a "senior account manager" instead of advising the called party they are being transferred to CENTURY

SUPPORT SERVICES, LLC in order to hide Defendant CENTURY's true identity and duck liability for violating the TCPA.

53. Rachel transferred the call to a representative from Defendant CENTURY named Jennifer.

54. Before Rachel transferred the call to Jennifer, Rachel stated,

"Hi I have here Mr. Manuel Guadian on the line and he has a combined total of unsecured debt for about seventy thousand dollars and he is from the state of Texas and interested in learning more about the program can you take the call now okay?"

55. Jennifer accepted the transfer from the female telemarketer confirming Defendant CENTURY hired US debt for telemarketing their debt relief services.

56. Defendant CENTURY share a portal database with US debt which allows US debt to transfer new client leads directly to Defendant CENTURY.

57. Jennifer then asked Plaintiff qualifying questions about his debt and monthly income and solicited Plaintiff for a "debt relief program" on behalf of Defendant CENTURY.

58. Plaintiff advised Jennifer he was interested in the debt relief program for the sole purpose of identifying and confirming the company responsible for the phone calls.

59. Jennifer obtained a copy of Plaintiff's credit report to see what debts would qualify for the "debt relief program."

60. Plaintiff received an email from Jennifer from jenniferS@centuryss.com with a copy of Plaintiff's credit report. *See Exhibit A*.

61. The credit report Plaintiff received from Jennifer shows Defendant Century is the company that requested Plaintiff's credit report and revealed the true identity of the company Jennifer was with and the company responsible for the alleged phone calls.

62. Plaintiff advised Jennifer he would call her back if he was interested in the debt relief program.

63. **Call# 4** – On February 22, 2023, at 9:40 AM, Plaintiff received a direct call from Jennifer with Defendant CENTURY from phone number (833) 985-0997.

64. Plaintiff advised Jennifer again that if he was interested, he would call her back.

65. **Call# 5** – On March 8, 2023, at 11:41 AM, Plaintiff received a direct call from Robert with Defendant CENTURY from phone number (833) 674-2122.

66. Plaintiff advised Robert again that if he was interested, he would call him back and remove him off their list.

67. **Call#6** – On March 10, 2023, at 10:20 AM, Plaintiff received a direct call from Defendant CENTURY from phone number (915) 233-9561.

68. Plaintiff answered and call dropped.

69. **Call#7** – On March 10, 2023, at 12:33 PM, Plaintiff received a direct call from Jared with Defendant CENTURY from phone number (915) 233-9561.

70. Plaintiff advised Jared again that he was not interested and to stop calling.

71. Jared spoofed the Caller ID to Plaintiff's area code (915) to trick Plaintiff into thinking the call was local.

72. Plaintiff never gave his prior express written consent to receive any of the calls.

73. Plaintiff has never had any business relationship with Defendant CENTURY and never knew who Defendant CENTURY was prior to the calls being made to his personal cell phone.

74. Defendant CENTURY employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

75. Defendant CENTURY has knowledge of and has adopted and maintained TCPA violations as a sales strategy for their financial gain.

76. Defendant CENTURY refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant CENTURY financially.

77. No emergency necessitated none of the alleged phone calls.

78. Plaintiff sent an internal do-not-call policy request to Defendant CENTURY to email info@centuryss.com on March 2, 2023, which is an email listed on the website they own and control https://www.centuryss.com.

79. Defendant never sent Plaintiff their internal do-not-call policy.

80. Upon information and belief, the Defendant did not train Us Debt or their representatives who engaged in telemarketing on the existence and use of Defendant CENTURY's internal do not call policy as they failed to recognize Plaintiff's personal cell phone 5579 is registered on the National Do-Not-Call Registry.

81. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

82. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phones because the phone lines were tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephones for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT CENTURY

83. Defendant CENTURY is vicariously liable for the telemarketing calls that generated the lead on their behalf.

84. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

85. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

86. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

87. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

88. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

89. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

90. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

91. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

92. Defendant CENTURY is legally responsible for ensuring that US Debt that make telemarketing calls on behalf of Defendant CENTURY comply with the TCPA when so doing.

93. Defendant CENTURY knowingly and actively accepted business from US Debt that originated through illegal telemarketing.

94. Defendant CENTURY knew (or reasonably should have known) that US Debt was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

95. By hiring a company to make calls on its behalf, Defendant "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

96. Moreover, Defendant CENTURY maintained interim control over the actions of US Debt.

97. For example, Defendant CENTURY had absolute control over whether, and under what circumstances, they would accept a customer from US Debt.

98. Furthermore, Defendant had day-to-day control over US Debt including the ability to prohibit them from using an ATDS to contact potential customers of Defendant CENTURY and the ability to require them to respect the National Do Not Call Registry.

99. Defendant CENTURY also gave interim instructions to US Debt by providing lead-qualifying instructions and lead volume limits.

100. Defendant CENTURY donned US Debt with apparent authority to make the calls at issue. Thus, US Debt pitched Defendant's debt relief services in the abstract.

101. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

102. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

103. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an

agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

104. US Debt transferred customer information, including Plaintiff's contact information, directly to Defendant CENTURY. Thus, US Debt had the "ability . . . to enter consumer information into the Defendant CENTURY's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

105. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

106. Defendant CENTURY is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when US Debt solicited Plaintiff for debt relief services on behalf of Defendant CENTURY.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

107. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

108. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

109. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the

functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

110. The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

111. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by US debt on behalf of Defendant CENTURY.

112. The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

**THE PLAINFF'S CELL PHONES ARE RESIDENTIAL NUMBERS**

113. The calls were to the Plaintiff's cellular phone 5579, which are the Plaintiff's personal cell phones that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phones for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phones registered in his personal name and pays the cell phones from his personal accounts.

**CAUSES OF ACTION:**

**COUNT ONE:**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

114. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

115. Defendant CENTURY and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least three (3) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without his prior express written consent.

116. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

117. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

118. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

119. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

120. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

121. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

122. Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

123. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**<u>COUNT THREE:</u>**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

124. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

125. The foregoing acts and omissions of Defendant constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

126. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

127. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

**(Violations of The Texas Business and Commerce Code 305.053)**

128. Plaintiff incorporates the foregoing allegations as if set forth herein.

129. The foregoing acts and omissions of Defendant or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

130. Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

131. Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Manuel Guadian prays for judgment against the Defendant severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for three (3) calls.

E. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for seven (7) calls.

F. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporations for seven (7) calls.

G. An award to Mr. Guadian of damages, as allowed by law under the TCPA and Texas state law;

H. An award to Mr. Guadian of interest, costs, and attorneys' fees, as allowed by law and equity.

I. Such further relief as the Court deems necessary, just, and proper.

March 10, 2023,

Respectfully submitted,

Manuel Guadian
Plaintiff, Pro Se
3805 Tierra Fiji Ln
El Paso, Texas 79938
915-472-5579
maguadianjr@gmail.com